

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 9, 2019

**BY ECF**

The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *United States v. David Boyd*, **18 Cr. 339 (PAC)**

Dear Judge Crotty:

  The defendant in the above-captioned case is scheduled to be sentenced on September 12, 2019, at 12:00 p.m. The Government respectfully submits this letter in connection with sentencing and in response to the defendant's submission, dated August 29, 2019 ("Def. Ltr.") (Dkt. No. 181). For the reasons set forth below, the Court should impose a sentence within the Stipulated Guidelines Range of 51 to 57 months' imprisonment.

  **I.** **Offense Conduct**

  Boyd and his co-conspirators participated in a wide-ranging scheme (the "Fraud Scheme") that involved unlawfully obtaining personally identifiable information of other individuals (including names, addresses, phone numbers, email addresses, birthdates, Social Security numbers, bank account numbers, credit and debit card numbers, and cellphone service provider account numbers); impersonating those individuals in order to obtain unauthorized access to their bank, credit and debit card, and cellphone service provider accounts; using such access to, among other things, facilitate the fraudulent transfer of funds to other bank accounts controlled by members of the conspiracy and the unauthorized purchasing of merchandise and gift cards at retail stores. In total, members of the conspiracy unlawfully obtained more than $3,500,000 and attempted to obtain a total of more than $6,000,000.

  To carry out the Fraud Scheme, members of the conspiracy obtained victims' personally identifiable information from various sources, including the dark web and commercial establishments at which members of the scheme worked. For example, one of Boyd's co-defendants, Jillian Walcott, stole victims' personally identifiable information from an urgent care walk-in medical clinic in Manhattan where she worked. After obtaining a victim's personally identifiable information, conspirators typically manufactured fraudulent credit or debit cards linked to victims' accounts at financial institutions in order to access those accounts to make fraudulent purchases or wire transfers.

In some cases, members of the conspiracy attempted to "port"[1] (i.e., transfer) a victim's telephone number to a cellphone controlled by a Fraud Scheme participant. Once the victims' telephone numbers were "ported" to cellphones controlled by Fraud Scheme participants, the Fraud Scheme participants would place telephone calls from those cellphones (to which the recently ported numbers were assigned) to the victims' financial institutions. In most cases, the relevant financial institution's telephone system automatically recognized the incoming telephone numbers as belonging to their account holders and, on that basis, required fewer pieces of identifying information to authenticate the identity of the callers. The defendants and/or their co-conspirators answered the limited set of authentication questions posed by the financial institution's customer service representative and then requested that (a) funds be sent via wire transfer to various accounts with other financial institutions and/or (b) "replacement" credit cards be sent to an address not associated with the account holder. In other cases, Fraud Scheme participants used the "ported" cellphones to approve fraudulent purchases when a victim's financial institution texted or called a victim's telephone number to verify the propriety of the fraudulent purchases.

Boyd was an experienced fraudster and senior member of the Fraud Scheme, and he provided guidance and direction to other members of the scheme in addition to participating in its activities. For example:

- On April 6, 2017, at 3:48 p.m., co-defendant Jamal Simon, the leader of the Fraud Scheme, placed a call to Boyd. During that call, Simon asked whether he could make unauthorized purchases with the "piece," referring to a particular counterfeit credit card, in New York and California at the same time, to which Boyd responded, "yeah." During the same call, Simon and Boyd discussed meeting up for the apparent purpose of making unauthorized purchases with the counterfeit credit card.

- On April 6, 2017, at 4:03 p.m., Simon placed a call to Boyd. During that call, Simon confirmed with Boyd, "Are you sure you can use it in both states, bro?" Boyd responded, "I'm positive, bro. I done did it."

- On April 7, 2017, from 11:07 a.m. to 11:15 a.m., Boyd, acting at Simon's direction, made seven unauthorized charges, totaling $13,660, using a victim's American Express account at a Target store in New Jersey.

---

[1] "Porting" refers to a formal technical process whereby an existing telephone number is reassigned to a different cellphone. Initiating the porting process without authorization of the owner of the cellphone number is a critical aspect of the scheme described herein, because credit card issuers often contact their customers via the cellphone number on file when the issuer detects suspicious activity on a customer's account. If a member of the scheme has control of the cellphone number, then that member can falsely confirm the propriety of fraudulent transactions.

## II. Procedural History

On May 14, 2018, Boyd was charged in Indictment 18 Cr. 339 (PAC) (the "Indictment") with conspiracy to commit access device fraud, in violation of Title 18, United States Code, Section 1029(b)(2) (Count One); conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349 (Count Two); and aggravated identity theft, in violation of Title 18, United States Code, Section 1028A (Count Three).  (PSR ¶ 1.)  On April 26, 2019, Boyd pled guilty to Count Two and Count Three of the Indictment pursuant to a plea agreement.  (PSR ¶ 8.)  In the plea agreement, the parties stipulated that the offense level for Count Two is 14, that the defendant's Criminal History Category is IV, and that the Guidelines Range for Count Two is 27 to 33 months' imprisonment, plus an additional 24 months' consecutive sentence for Count Three.  (PSR ¶ 8.)  The Probation Office reached the same conclusion with respect to the Guidelines calculation (PSR ¶ 130), and recommended that the Court impose a sentence of 51 months' imprisonment.  (PSR at 25.)

On August 29, 2019, the defendant submitted a sentencing memorandum, in which he requested a below-Guidelines sentence of only the two-year mandatory minimum in recognition of his "personal history" and his "profound remorse and acceptance of responsibility." (Def. Ltr. 1, 15.)

## III. Sentences Imposed on Co-Defendants

To assist the Court in assessing the relative culpability of the defendants, the Government provides the following chart of the defendants who have pled guilty in this case, listed approximately in their order of culpability (from most to least culpable):

| Defendant | Criminal History Category | Criminal Offenses | Mandatory Minimum (months) | Guidelines Range (months) | Sentence of Imprisonment (months) |
|---|---|---|---|---|---|
| Jamal Simon | I | wire fraud conspiracy; aggravated identity theft; wrongfully obtaining individually identifiable health information | 24 | 121 to 155 | |
| Melvin Brown | IV | wire fraud conspiracy; aggravated identity theft | 24 | 65 to 75 | |

| | | | | | |
|---|---|---|---|---|---|
| Dawdu Marriott | III | wire fraud conspiracy; aggravated identity theft | 24 | 57 to 65 | |
| **David Boyd** | **IV** | **wire fraud conspiracy; aggravated identity theft** | **24** | **51 to 57** | |
| Rashaun McKay | III | wire fraud conspiracy; aggravated identity theft | 24 | 51 to 57 | |
| Dwayne Norville | IV | wire fraud conspiracy | 0 | 33 to 41 | |
| Jillian Walcott | I | wire fraud conspiracy; wrongfully obtaining individually identifiable health information | 0 | 33 to 41 | |
| Megan Montoya | III | wire fraud conspiracy | 0 | 33 to 41 | |
| Darren Davidson | I | wire fraud conspiracy | 0 | 27 to 33 | |
| Yvette Lubrun | I | wire fraud conspiracy | 0 | 15 to 21 | Probation |

### IV.    Discussion

#### A. Applicable Law

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence

Case 1:18-cr-00339-PAC   Document 189   Filed 09/10/19   Page 5 of 7

Page 5

disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. A Guidelines Sentence Is Appropriate In This Case

The 18 U.S.C. § 3553(a) factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to afford adequate deterrence to this defendant and others who are similarly situated, to promote respect for the law, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C). These considerations weigh in favor of a sentence within the Guidelines Range of 51 to 57 months' imprisonment.

*First*, a sentence within the Guidelines Range would appropriately reflect the nature and seriousness of the defendant's conduct. The defendant played an important role in the Fraud Scheme, providing advice to Simon, the scheme's leader, and using fraudulent credit cards to cause between $15,000 and $40,000 in losses to victims. Overall, the Fraud Scheme caused losses of more than $3.5 million to victims and attempted to scam millions more.

*Second*, a sentence within the Guidelines Range is necessary to promote respect for the law and to deter others who are similarly situated from participating in similar schemes. Fraud schemes of this type are on the rise because the unscrupulous have found that identity theft is profitable and easy to implement and conceal from law enforcement. Following the nominal investment in obtaining individually identifiable information and blank cards with magnetic strips, the crime carries no further financial cost, apart from the prospect of apprehension and criminal penalties. However, the likelihood of detection is substantially lower than many other theft offenses. Victims often do not realize that have been victimized for some period and are not able to report the fraud until well after funds have been stolen from their accounts and they have been substantially harmed. In addition, the investigation of cases such as these is extraordinarily resource-intensive for law enforcement, and requires a substantial investment of resources in order to reveal the activities of a scheme such as this and the identities of its members. Substantial punishment is required to counterbalance the general perception that this type of scheme carries low costs for perpetrators.

*Third*, a sentence within the Guidelines Range is needed to deter this defendant from committing additional crimes and to protect the public. The defendant's criminal history is

lengthy, serious, and shows that the defendant was been engaged in the same type of criminal behavior over a period of six years, notwithstanding intervening arrests and periods of imprisonment:

- In August 2012, the defendant was arrested for depositing $8,000 of fraudulent money orders at bank and then attempting to purchase $4,000 in legitimate money orders to launder the fraud proceeds. Much like this case, the defendant used a bank card that belonged to a victim. The defendant attempted to flee, but was apprehended. At that time, he possessed multiple debit cards and a paper listing identifying information for the victim cardholders. The defendant was sentenced to one year of imprisonment. (PSR ¶¶ 63-65.)

- In October 2012, the defendant was arrested for making purchases with numerous fraudulent credit cards, and had a dozen of them on his person at the time of his arrest. Even after he was apprehended, the defendant attempted to hide pieces of another fraudulent credit card in his detention cell, which was reassembled and determined to have been used to make additional fraudulent purchases. The defendant was sentenced to six months' imprisonment. (PSR ¶¶ 66-68.)

- In January 2013, the defendant was arrested in possession of five counterfeit credit cards when trying to make fraudulent purchases at a Target, the same type of store at which he made fraudulent purchases in this case. The defendant was sentenced to six months' imprisonment and five years of probation. (PSR ¶¶ 69-70.)

The defendant's criminal conduct in this case appears to be a continuation of the same pattern or course of conduct. None of the three terms of imprisonment appears to have had any deterrent effect the defendant at all. The Court should sentence the defendant to a term of imprisonment within the Guidelines Range to ensure that the defendant is adequately deterred and to protect the public from his crimes for a meaningful period.

      The Court should reject the defendant's request for a sentence of the mandatory minimum of 24 months' imprisonment. Such an extraordinarily lenient sentence is not called for by the facts of this case, it would fail to recognize the seriousness and dangerousness of the conduct at issue, and it would not send the appropriate message to the defendant or the public. It would, most importantly, fail completely to take into account the defendant's "persistent criminal history" and the fact that he poses "a high risk of recidivism." (PSR at 25-26.) It is particularly troubling that the defendant was on probation at the time of the offense, and even more disturbing that he has "been undeterred by a period of custody and a term of supervision." (PSR at 26.) Clearly, the defendant's prior convictions and time spent in jail have not dissuaded him from continuing to commit crimes or served as a needed wake-up call. While the Government certainly hopes that this case has, in fact, "sobered" the defendant and "served as a wake-up call." (Def. Ltr. 12.). However, the defendant's track record to date does not give confidence that this is likely to be the case. A sentence of imprisonment within the Guidelines Range is necessary and appropriate to address this defendant's history and likely future.

In sum, a sentence within the Guidelines Range adequately would balance the various considerations under § 3553(a) and achieve the statute's stated objectives.

## V. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence on the defendant within the Guidelines Range of 51 to 57 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

>Respectfully submitted,
>
>GEOFFREY S. BERMAN
>United States Attorney
>
>By: *Robert B. Sobelman*
>Nicholas W. Chiuchiolo
>Robert B. Sobelman
>Assistant United States Attorney
>(212) 637-1247/2616

Cc: Katya Jestin, Esq. (by ECF)